ORDERED.

Dated: March 23, 2021

_____
Michael G. Williamson
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION
www.flmb.uscourts.gov

| | |
|---|---|
| In re: | Case No. 8:19-bk-01436-MGW |
| | Chapter 7 |
| Christine Melissa Mallett, | |
|     Debtor. | |
| _____/ | |
| Victor C. Mallett, as Trustee of the Revocable Living Trust of Victor C. Mallet, | Adv. No. 8:19-ap-00249-MGW |
|     Plaintiff, | |
| v. | |
| Christine Melissa Mallett, | |
|     Defendant. | |
| _____/ | |

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**
**ON DISCHARGEABILITY OF STUDENT LOANS**

Under Bankruptcy Code § 523(a)(8)(B), a student loan is nondischargeable if interest paid on the loan qualifies for a tax deduction under Internal Revenue Code § 221. Interest on a loan is tax deductible under Internal Revenue Code § 221 if the

loan was "incurred by the taxpayer solely to pay qualified higher education expenses."[1] For eight years, the Debtor took a tax deduction for interest paid on a loan from Frances Mallet. Even so, the Debtor argues the loan is dischargeable because there is no evidence she *used* the loan proceeds solely to pay higher education expenses.

Whether a loan is dischargeable depends on the purpose of the loan—i.e., whether it was *incurred* solely to pay higher education expenses—not how the loan proceeds were used. By taking a tax deduction for the interest paid on the loan from Mrs. Mallet, the Debtor admitted—under the penalty of perjury—that the loan was incurred solely to pay higher education expenses. Because there is no evidence controverting or explaining away the Debtor's admission, the Court concludes the loan from Mrs. Mallet is nondischargeable under Bankruptcy Code § 523(a)(8)(B).

## I.   FINDINGS OF FACT

Between 2000 and 2007, the Debtor took out loans (both federal and private) each semester to attend college—first at Webber International University; then for a semester at the University of South Florida; and finally at the International Academy of Design & Technology. After graduating from the International Academy of Design & Technology in 2007, the Debtor consolidated her various loans into two loans: (1) a federal consolidated loan serviced by Navient; and (2) a private consolidated loan serviced by ACS.

---

[1] 26 U.S.C. § 221(a), (d)(1).

The Debtor had been paying on her consolidated loans for two years when Frances Mallett (the Debtor's then-husband's grandmother) offered to loan the Debtor money to pay off her private student loans. On April 29, 2009, the Debtor and Mrs. Mallett entered into a written loan agreement.[2] Under the agreement, Mrs. Mallett loaned the Debtor $70,996.19. The Debtor agreed to repay that amount over twenty-five years at 4 percent interest.[3] The Debtor then used the loan to pay off her private student loans with ACS.

For the next eight years, the Debtor paid Mrs. Mallett on the loan. During that time, 2009 to 2016, the Debtor claimed the interest she paid on the loan as a deduction on her tax returns.[4] At some point in 2017, after the Debtor had filed for divorce from her husband, she stopped paying on the loan to Mrs. Mallet.

After Mrs. Mallet passed away, her son Victor Mallet took assignment of the loan (through his own revocable living trust) from Mrs. Mallet's inter vivos trust.[5] He then sued the Debtor for breach of the loan agreement in state court. On December 5, 2018, the state court entered a $61,407 final judgment in Victor Mallet's favor.[6]

---

[2] Pl.'s Ex. 13.

[3] *Id.*

[4] Pl.'s Exs. 5 – 12.

[5] Pl.'s Ex. 14.

[6] Pl.'s Ex. 15.

Three months later, the Debtor filed for bankruptcy. She scheduled the $61,407 debt owed to Mrs. Mallet's trust. Victor, who took assignment of the loan and holds the $61,407 final judgment, sued to have the debt determined to be nondischargeable under Bankruptcy Code § 523(a)(8).[7]

## II. CONCLUSIONS OF LAW

Bankruptcy Code § 523(a)(8) excepts from the discharge four categories of "student loans."[8] The first three categories are educational benefit overpayments or loans made, insured, or guaranteed by a governmental unit; educational benefit overpayments or loans made under a program partially or fully funded by a governmental unit or nonprofit institution; and funds received as an educational benefit, scholarship, or stipend.[9] This case involves the fourth category of student loans: any other educational loan that is a "qualified education loan" under Internal Revenue Code § 221(d)(1).[10]

Section 221(a) of the Internal Revenue Code provides a tax deduction for certain "qualified education loans."[11] Section 221(d)(1), in turn, defines what constitutes a "qualified education loan."[12] Thus, if a loan meets the definition of

---

[7] Adv. Doc. No. 1.

[8] 11 U.S.C. § 523(a)(8).

[9] 11 U.S.C. § 523(a)(8)(A).

[10] 11 U.S.C. § 523(a)(8)(B).

[11] 26 U.S.C. § 221(a).

[12] 26 U.S.C. § 221(d)(1).

"qualified education loan" under Internal Revenue Code § 221(d)(1) for tax purposes, then it is nondischargeable under Bankruptcy Code § 523(a)(8)(B).

A loan meets the definition of Internal Revenue Code § 221(d)(1) if it was "incurred by the taxpayer solely to pay qualified higher education expenses."[13] "Higher education expenses" are defined as the "cost of attendance" (itself a defined term) at an "eligible institution" (another defined term).[14] The Court must decide whether the debt owed to Mrs. Mallet is a "qualified education loan" under Internal Revenue Code § 221(d).

The loan by Mrs. Mallet itself, of course, was not used to directly pay "higher education expenses." Rather, the loan from Mrs. Mallet was used to refinance the Debtor's private student loans. Under Internal Revenue Code § 221(d)(1), a loan used to refinance a loan is a "qualified education loan" if the original loan being refinanced was a "qualified education loan." So the loan from Mrs. Mallet, which was used to refinance the Debtor's private student loans, is nondischargeable under § 523(a)(8)(B) if the Debtor's original private student loans are "qualified education loans."

---

[13] 26 U.S.C. § 221(d)(1). In order for a loan to be a "qualified education loan," the "qualified higher education expenses" must have been incurred by the taxpayer or the taxpayer's spouse or dependent; must have been paid within a reasonable time before or after the indebtedness was incurred; and must be attributable to education furnished during a period in which the recipient was an eligible student. *Id.*

[14] Bankruptcy Judge Roberta Colton has aptly noted, as have other courts, that "resolving what a 'qualified education loan' is requires a trip through a series of nested definitions located in different titles, chapters, and sections of the United States Code." *Quintanilla v. Nelnet Servicing LLC (In re Quintanilla)*, 2020 WL 7333590 (Bankr. M.D. Fla. 2020).

Victor Mallet bears the burden of proving that the Debtor's original private student loans are nondischargeable. The Debtor argues that Victor Mallet failed to meet that burden here because he failed to prove that the original loan "was *used solely to pay* higher education expenses."[15]

But the test is not whether the Debtor *used* the loan proceeds *solely to pay* higher education expenses. As Judge Colton explained four months ago in *In re Quintanilla*, "a debtor's stated purpose in taking out the Loan should be examined rather than how the debtor actually spends the funds."[16] More recently, the Sixth Circuit Court of Appeals, in *In re Conti*, agreed that courts should look to the initial purpose of the loan—rather than how the loan proceeds were used—to determine whether a loan is a "qualified education loan."[17]

As the *Conti* Court points out, focusing on the initial purpose of the loan is consistent with the plain language of Internal Revenue Code § 221(d)(1).[18] Section 221(d)(1) defines "qualified education loans" as any indebtedness *incurred*—as opposed to used—solely to pay higher education expenses. What's more, as the *Conti* Court also points out, focusing on the initial purpose—rather than the use—of the

---

[15] Adv. Doc. No. 31 at 2 – 3 (emphasis added).

[16] 2020 WL 7333590 at *5 (citing *Conti v. Arrowood Indem. Co.*, 612 B.R. 877, 881 (E.D. Mich. 2020)).

[17] *Conti v. Arrowood Indem. Co.*, 982 F.3d 445, 449 (6th Cir. 2020) ("Both parties argue that the court should look to the initial purpose of Conti's loans, rather than their actual uses, to determine whether they fall within the scope of (8)(B). We agree that this is the proper inquiry.").

[18] *Id.*

loan avoids the absurd scenario where borrowers would be rewarded for misusing their student loans.[19]

As it stands, a borrower who uses all her student loan proceeds on "higher education expenses" can discharge her student loan only if she can show that not discharging it would impose an "undue hardship."[20] But what if that same borrower used some of her student loans for a spring break trip with her friends? Or a birthday gift for a friend or family member? *Voila*! Under the Debtor's interpretation of Internal Revenue Code § 221(d)(1), the loan is no longer a "qualified education loan" since the proceeds were not *used* solely to pay higher education expenses, and the loan thus transmogrifies into a *dischargeable* student loan under Bankruptcy Code § 523(a)(8)(B).

As the Sixth Circuit explained in *Conti*, "allowing debtors to discharge their student loans simply because they misuse the funds for non-educational expenses would not further Congress' goal of preserving the financial integrity of the student loan system."[21] Thus, focusing on a borrower's use of student loan proceeds—rather than the initial purpose of the loan—is not only inconsistent with the language of Internal Revenue Code § 221(d)(1) and Bankruptcy Code § 523(a)(8)(B)—but their purpose as well. The Court therefore agrees with the Sixth Circuit that the proper test

---

[19] *Id.*

[20] 11 U.S.C. § 523(a)(8).

[21] *Conti*, 982 F.3d at 449.

for determining whether a student loan is dischargeable under Bankruptcy Code § 523(a)(8)(B) is whether the purpose of the loan—i.e., whether the loan was incurred—solely to pay higher education expenses.

Although the Debtor acknowledges taking out student loans to pay for college,[22] she argues that Victor Mallet has failed to prove that she incurred the loan solely to pay higher education expenses because he failed to introduce the Debtor's original loan application, her promissory note, or any other evidence regarding the Debtor's loans. The Debtor has a point, to an extent.

In *Conti*, the Sixth Circuit noted that a "loan's purpose is centrally discerned from the lender's agreement with the borrower."[23] There, the loan applications and promissory notes tied the loans to Conti's status as a student; limited the amount of the loan to the "full cost of education less any financial aid" Conti was receiving; limited the use of the loan to "specific educational expenses"; and included an area for the school to certify that the loan amount (coupled with Conti's other financial aid) would not exceed the cost of education.[24] Likewise, in *Quintanilla*, the loan's terms and conditions provided that the loan proceeds would be used for educational

---

[22] Adv. Doc. No. 31 at 3, 5.

[23] *Conti*, 982 F.3d at 449.

[24] *Id.*

expenses.[25] Here, there is no evidence that the Debtor's loan applications or promissory notes contained similar language.

Even so, the Debtor goes too far when she says Victor Mallet "failed to provide *any evidence* or testimony to the Court" that her original student loans "met the definition of a qualified education loan."[26] At trial, Victor Mallet introduced copies of the Debtor's tax returns for 2009 through 2016. Over that eight-year period, the Debtor claimed a tax deduction each year for the interest she paid to Mrs. Mallet. The Debtor could not have claimed that tax deduction unless the loan from Mrs. Mallet met the definition of a "qualified education loan" under Internal Revenue Code § 221(d). The Debtor's statements on her tax returns are therefore an evidentiary admission that the loan from Mrs. Mallet is a "qualified education loan."[27]

Put another way, the Debtor's representation on her tax returns—under the penalty of perjury—that the interest on her loan from Mrs. Mallet was tax deductible is the equivalent of her sitting on the stand and testifying under oath that the loan

---

[25] *Quintanilla v. Nelnet Servicing LLC (In re Quintanilla)*, 2020 WL 7333590, at *1 (Bankr. M.D. Fla. Nov. 20, 2020) ("Here, the undisputed facts show the Loan was made for educational expenses and based on Debtor's status as a student at FMU. The terms and conditions of the Loan are clear that the 'proceeds of this loan will be used for the educational expenses incurred at [FMU].'").

[26] Adv. Doc. No. 31 at 3 (emphasis added).

[27] On their face, the Debtor's representations on her tax return are only an admission that the interest on the loan from Mrs. Mallet is tax deductible. In this context, though, the Debtor's representations call to mind the transitive property of equality: if a=b and b=c, then a=c. Here, the Debtor represented that her loan interest is tax deductible; tax deductible loans are "qualified education loans"; therefore, the loan from Mrs. Mallet is a "qualified education loan."

from Mrs. Mallet met all the requirements of a "qualified education loan" under Internal Revenue Code § 221(d)(1). An evidentiary admission, of course, can be controverted or explained away.[28] But here, the Debtor failed to explain away her admission that the loan from Mrs. Mallet was a "qualified education loan" for tax purposes. The only evidence before the Court regarding the nature or purpose of the Debtor's original student loans is the Debtor's unrebutted admission that the loans were "qualified education loans."

### III. CONCLUSION

The Debtor argues that just because an individual deducts student loan interest on her tax return doesn't mean the loan is a "qualified education loan." To the contrary, only interest on "qualified education loans" is entitled to a tax deduction. Therefore, evidence that a taxpayer took the student loan interest deduction is evidence that the loan is a "qualified education loan" under Internal Revenue Code § 221(d)(1). And because Bankruptcy Code § 523(a)(8)(B) borrows Internal Revenue Code § 211(d)(1)'s definition of "qualified education loan," an admission that a loan is a "qualified education loan" for tax purposes is an admission that the loan is a "qualified education loan" under Bankruptcy Code § 523(a)(8)(B).

---

[28] *Mays v. Director, Office of Workers' Compensation Programs*, 938 F.3d 637 (5th Cir. 2019) ("An evidentiary admission, by contrast, 'is "merely a statement of assertion or concession made for some independent purpose," and it may be controverted or explained by the party who made it.'") (quoting *Martinez v. Bally's Louisiana, Inc.*, 244 F.3d 474, 476 – 77 (5th Cir. 2001)).

Here, the Debtor admitted her original student loans were "qualified education loans" for tax purposes, which means she has admitted they were "qualified education loans" for nondischargeability purposes. The Debtor did not controvert or explain that admission. Victor Mallet has therefore met his burden of proving that the loan from Mrs. Mallet is nondischargeable under Bankruptcy Code § 523(a)(8)(B). The Court will enter a separate final judgment declaring that the debt owed to Victor Mallet is nondischargeable.

---

Attorney Eric Barksdale is directed to serve a copy of these Findings of Fact and Conclusions of Law on interested parties who do not receive service by CM/ECF and to file a proof of service within three days of entry of these Findings of Fact and Conclusions of Law.

---

**M. Eric Barksdale**
**Law Office of M. Eric Barksdale, P.A.**
*Counsel for Victor Mallet, as Trustee of the*
*Revocable Living Trust of Victor C. Mallet*

**Kristina E. Feher, Esq.**
**Feher Law, PLLC**
*Counsel for the Debtor*